**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| KEVIN S. MAAS,<br><br>Petitioner,<br><br>v.<br><br>DAISY CHASE,<br><br>Respondent. | Case No. 25-CV-1190-JPS<br><br>**ORDER** |

## 1. INTRODUCTION

On August 11, 2025, Petitioner Kevin S. Maas ("Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. The Court screened the petition and found six possible grounds for relief. ECF No. 5 at 3–4. The Court noted that it appeared likely that Petitioner's grounds were procedurally barred. *Id.* at 4–5. The Court ordered Respondent Daisy Chase ("Respondent") to file either a motion to dismiss or answer the petition. *Id.* at 7–8. Currently before the Court is Respondent's motion to dismiss Petitioner's six grounds for relief. ECF No. 8. The motion is fully briefed. ECF Nos. 9, 14, 18.

## 2. FACTUAL BACKGROUND

### 2.1 Petitioner's Original Conviction

Petitioner is currently serving a thirty-year custodial sentence for burglaries committed in Marinette County, Wisconsin in 2001, when Petitioner struggled with serious substance abuse. ECF No. 1 at 1; ECF No. 9-10 at 42, 49; ECF No. 14 at 1.[1] In 2002, Petitioner entered into a multi-

[1]Facts within this section are drawn from the Petition, exhibits attached to the Petition, and exhibits attached to Respondent's brief in support, ECF Nos. 9-1–

jurisdictional plea agreement to cooperate with a joint task force investigating burglaries in Michigan and Wisconsin. ECF No. 9-1 at 2. *Id.* (footnote omitted). In exchange, the Marinette County District Attorney's Office (and authorities in Michigan) "agreed to recommend probation for any resulting Marinette County charges, with a year of conditional jail time to be served concurrently with the Michigan sentence." *Id.* However, the Marinette County District Attorney's Office did not charge Petitioner until March 2005, after Petitioner had completed the Michigan sentence. *Id.*

Petitioner pled no contest to four counts of burglary; as the "factual basis for the pleas, the circuit court relied upon the facts set forth in the complaint, which consisted almost entirely of the admissions [Petitioner] had made in his statement to the joint task force." *Id.* A few months later, the court allowed Petitioner to withdraw his no-contest pleas because the delay "had eliminated the bargained-for possibility that [Petitioner] could serve any sentence or conditional jail time for the Marinette County offenses concurrently with the Michigan sentence." *Id.* at 2–3.

Petitioner's counsel—Timothy Blank—moved to dismiss the charges or to suppress Petitioner's statement to the joint task force. *Id.* at 3. "While those motions were pending, the prosecutor faxed the circuit court a copy of a letter . . . seeking the court's approval of a revised plea agreement." *Id.* In the proposed revised agreement, the parties would recommend that [Petitioner] be ordered to pay restitution without serving additional time in jail or on probation. *Id.*

Following a forty-five-minute off-the-record discussion between counsel, Petitioner, and the court, Petitioner chose not to pursue the motions to dismiss or to suppress his statement, instead agreeing to

9-12. For brevity, citations to facts included in this section are omitted from later analysis.

withdraw his withdrawal of the pleas. *Id.* at 3–4. The court re-instated the no-contest pleas on August 10, 2005, without an additional colloquy and without discussing the off-the-record meeting or the revised plea agreement. *Id.* at 4.

At a sentencing hearing on April 24, 2006,[2] the court "followed the parties' joint recommendation (in accordance with the original, not the proposed revised plea agreement), withholding sentence and placing [Petitioner] on probation." *Id.* The court imposed probation for twenty-four months. ECF No. 9-6 at 59.

### 2.2 Postconviction Period

Many years later, at an evidentiary hearing on attorney Blank's conduct, the trial court would make the following evidentiary findings. ECF No. 1-2. At the April 2006 sentencing hearing, neither the trial court nor Blank advised Petitioner on the record of his appeal rights. ECF No. 1-2 at 12–13. On the day of the sentencing hearing, Petitioner "signed the standard Notice of Rights to Appeal form which he had obtained from Attorney Blank and . . . checked the box that he was not yet certain whether he wished to appeal or not." *Id.* at 13. "On April 24, 2006, Attorney Blank terminated his representation. This was during the twenty (20) day period in which [Petitioner] had the right to make a decision as to whether to appeal or not." *Id.* Petitioner "claims that he made several attempts to reach Attorney Blank during that twenty (20) day period by telephone, letter and a visit to Mr. Blank's office." *Id.* Blank destroyed Petitioner's file five years later; during that time, Petitioner "took absolutely no actions whatsoever to appeal or in

[2]The restitution and sentencing hearing transcript is dated April 21, 2006. ECF No. 9-6 at 1. Petitioner's judgment of conviction is dated April 24, 2006. ECF No. 9-7. The Court will rely on the date that Petitioner's judgment of conviction was entered: April 24, 2006.

any way question the sentence which he had received from the [c]ourt." *Id.* at 14. The court concluded "that Mr. Blank did not confer with the Defendant at any time after the date of sentencing during the twenty (20) day potential appeal period and . . . that constitutes a breach of his duty given the fact that in his last communication with his client Mr. Blank was aware that his client had checked the box that he was uncertain as to whether re intended to appeal or not." *Id.* at 15.

### 2.3 Sentencing Following Revocation of Probation

Petitioner's probation was subsequently extended two years. *See* ECF No. 9-12 at 2; ECF No. 1-2 at 27. Over three years after Petitioner's original judgment of conviction, on December 11, 2009, Petitioner's probation was revoked when he threatened to kill people, including the judge, the district attorney, his former girlfriend, and his family members. ECF No. 9-10 at 7. A special prosecutor, new defense counsel, and new trial court were assigned to the resentencing. *See id.* at 1; ECF No. 9-1 at 4–5.

Defense counsel acknowledged the unusual posture of the case:

> It's a very strange situation, and the papers were lost for three years. During that time actually [Petitioner] had did [sic] a year in Michigan, which was originally his original plea agreement was supposed to be that he do a year that would be concurrent with Michigan and Wisconsin. He had done that year in Michigan and fully completed the two years of probation he had and completely discharged off of that. By the time the Marinette County District Attorney's Office discovered the paperwork and found behind a desk or something like that, and they had cleaned three years later, brought charges on him, which is kind of how this whole thing got weird.

ECF No. 9-10 at 17. Petitioner also spoke to the unusual posture in his colloquy:

> I thought I made a good decision in an effort to set my life back on course. When I approached the detectives in

> Menominee and Marinette and the FBI and came forward what I knew about the crimes that I have been involved in or was aware. I thought things were going to be handled differently, and yes, I was quite shocked, three years after I thought I was done, to have charges brought to my doorstep again as if nothing had been done. I don't know how to discuss this because I didn't realize what direction some of these things were really going today.

*Id.* at 48. The court spoke to this history and the connection between the burglaries underlying Petitioner's conviction and the conduct that led to revocation:

> Now, why -- why does [the conduct leading to revocation] seem to matter in relation to resentencing on burglary charges?
>
> [. . .]
>
> [T]he connection is that I believe [Petitioner] is serious.
>
> [. . .]
>
> Now, [defense counsel] says, well, you don't know really what he's going to do until you let him out and see what happens, well, I think the record is so chilling and so scary that the Court isn't going to take that risk. I think [Petitioner's] character has demonstrated that he is a danger to society and that society needs to be protected from him.
>
> [. . .]
>
> He's not a good risk. We know that because of all his failures, all of his revocations, all the crimes he's committed while the new crime's threatening the judge to put him in prison. These victims belatedly, I think, need to know that justice has been served. It's certainly been denied because of the DA's misplacing of the file, or not getting to the file for three years while it sat on some pile of reports. There is a moral need for punishment, even though belated. These victims know that a harsh and difficult meaningful sentence was imposed, not because of the original four burglaries, but all the nastiness and the evilness that has happened since.

*Id.* at 71–74. The court considered a change in state law; when Petitioner committed the burglaries the maximum penalty was ten years' imprisonment and five years' extended supervision, but when he was resentenced, the maximum was seven-and-a-half years' imprisonment and three years' extended supervision. *Id.* at 78–79. The court sentenced Petitioner to seven-and-a-half years' imprisonment on each burglary count to run concurrent with one another and three years' extended supervision on each count to run concurrent with one another, for a total sentence of thirty years' imprisonment and twelve years' extended supervision. *Id.*

### 2.4 Appellate Proceedings and Evidentiary Hearing

Appointed appellate counsel submitted a no-merit report that considered: (1) whether trial counsel was ineffective for failing to argue that the trial court did not have authority to have extended Petitioner's probation; (2) whether Petitioner was denied due process when the trial court declined to recuse himself; (3) whether the trial court abused his sentencing discretion; and (4) whether trial counsel was ineffective for failing to argue for a risk reduction sentence. ECF No. 9-12 at 2–3. In response to the no-merit report, Petitioner argued the sentencing judge showed bias because the sentencing judge was a friend of the judge Petitioner had threatened; his sentence was overly harsh; his plea agreement was violated by the extension of probation; and the circuit court was impermissibly involved in the plea negotiations. *Id.* at 4. The Wisconsin Court of Appeals concluded each of these issues would have no merit on appeal. *Id.* at 3–5.

Approximately ten years after the resentencing following revocation, Petitioner filed a *Knight* petition in the Wisconsin Court of Appeals seeking to reinstate his right to appeal from the original judgment of conviction. ECF No. 1-2 at 2. Petitioner asserted Blank provided

ineffective assistance of postconviction counsel when Blank failed to contact Petitioner after sentencing and failed to file a notice of intent to seek postconviction relief from the original conviction. *Id.* The court of appeals remanded to the circuit court for an evidentiary hearing. *See* ECF No. 9-8 at 1. Following the evidentiary hearing, in April 2020, the court of appeals concluded that the doctrine of laches barred Petitioner's claim:

> Laches applies when: (1) the defendant has unreasonably delayed in bringing the claim; (2) the State had no actual notice of the claim; and (3) the State was prejudiced by the delay in bringing the claim. *State ex rel. Coleman v. McCaughtry*, 2006 WI 49 ¶ 17, 290 Wis. 2d 352, 714 N.W.2d 900. It was unreasonable for [Petitioner] to wait thirteen years to bring his claim when he had multiple other opportunities to do so; [Petitioner] never provided the State with notice that he wanted to appeal the original judgment of conviction but was abandoned; and the State has been prejudiced by counsel's lack of file and memory.

ECF No. 9-8 at 3. Petitioner moved for reconsideration, which the court of appeals granted, and the court of appeals ordered another evidentiary hearing. ECF No. 1-2 at 7–9, 20–21. This second evidentiary hearing produced the factual findings recounted above.

Again, the court of appeals concluded Petitioner's claim was barred by laches.

> Having reviewed the record and accepted the circuit court's factual findings as not clearly erroneous, we conclude that [Petitioner's] ineffective assistance of counsel claim is barred by laches. First, it was unreasonable for [Petitioner] to wait thirteen years before asserting his claim that he had been denied his right to appeal the original judgment of conviction. At a minimum, [Petitioner] was aware of his appellate rights by 2009, when he appealed from his sentence after revocation. Second, the State had no reason to believe that [Petitioner] would seek to appeal his judgment of conviction after the circuit court imposed a term of probation jointly requested by the parties. Third, the State's ability to defend against an

> ineffective assistance of counsel claim was hindered by Blank's destruction of his file and his faded memory of the period of time immediately following the original sentencing hearing. Finally, it is appropriate and equitable to apply laches here, where the petitioner is seeking review of a judgment of conviction following the revocation of his probation-which suggests dissatisfaction with his post-revocation sentence rather than a genuine misunderstanding of his plea.

*Id.* at 23.

A few months later, Petitioner filed a § 974.06 motion in circuit court. ECF No. 1-2 at 28; ECF No. 2 at 3–4; ECF No. 9-1 at 1. Petitioner argued that: (1) trial counsel was ineffective for failing to consider whether the state had breached the multi-jurisdictional plea agreement before recommending the no-contest plea; (2) trial counsel was ineffective for failing to object to ex parte communication between the prosecutor and the court about the proposed revised plea agreement; (3) trial counsel was ineffective for failing to pursue the suppression motion; (4) postconviction or appellate counsel was ineffective for failing to file a notice of intent to seek postconviction relief; (5) the circuit court erred by failing to conduct an additional plea colloquy before reinstating the no-contest pleas; (6) the reinstatement of the original Marinette County plea agreement should not have been allowed because the original prosecutor was replaced by a special prosecutor; and (7) the circuit court's involvement in the plea negotiation rendered the plea involuntary. ECF No. 9-1 at 6. The circuit court denied the motion without a hearing. *Id.* at 1, 7. On appeal, Petitioner argued that: (1) his motion should have been heard in another branch; (2) the circuit court erred by deciding his claims had been previously litigated; and (3) the court erred by determining his allegations were insufficient to warrant a hearing. *Id.* at 7.

The court of appeals affirmed the denial of the postconviction motion. *Id.* at 1. The court of appeals determined that Petitioner's allegations on the first, second, fifth, and sixth claims were either too conclusory to warrant a hearing, or did not entitle Petitioner to relief. *Id.* at 10–11. The fourth claim had been previously litigated. *Id.* at 8–9. The third and seventh claims would entitle Petitioner to a hearing, but Petitioner needed "to include all available postconviction claims in a postconviction discovery motion absent a sufficient reason for failing to do so." *Id.* at 13 (citing *State v. Kletzien*, 794 N.W.2d 920 (Wis. Ct. App. 2011)). Petitioner had all of the information, but failed to include the third and seventh claims in his discovery motion and did not argue a sufficient reason for failing to include them. *Id.* The Wisconsin Supreme Court denied a petition for review on April 10, 2025. ECF No. 1-2 at 46.

### 2.6 Timeline Summary

The Court produces below a timeline summary of important dates.

| Date | Event | Record |
|---|---|---|
| April 2002 | Petitioner entered multi-jurisdictional plea agreement | ECF No. 9-1 at 2; ECF No. 9-10 at 17 |
| March 17, 2005 | Petitioner charged in Marinette County with four counts of burglary | ECF No. 9-1 at 2; ECF No. 9-10 at 16 |
| August 10, 2005 | Petitioner pled no-contest to four counts of burglary | ECF No. 9-1 at 2; ECF No. 9-2 |
| October 7, 2005 | Petitioner withdraws no-contest pleas | ECF No. 9-1 at 2 |
| March 17, 2006 | Petitioner decides not pursue motion to dismiss or to suppress; court re-instates no-contest pleas from August 10, 2005 | ECF No. 9-1 at 4 |

| | | |
|---|---|---|
| April 24, 2006 | The court imposes probation and withholds sentence | ECF No. 9-1 at 4; ECF No. 9-6 & 9-7 |
| December 11, 2009 | Probation is revoked; Petitioner is resentenced to thirty years' imprisonment and twelve years' extended supervision | ECF No. 9-10 at 78 |
| June 30, 2011 | Wisconsin Court of Appeals concludes there is no arguable merit to any appellate issues related to sentencing after revocation | ECF No. 9-12 |
| December 20, 2019 | Wisconsin Court of Appeals remands for an evidentiary hearing on Petitioner's ineffective assistance of appellate counsel claim | ECF No. 1-2 at 4 |
| April 29, 2020 | Wisconsin Court of Appeals reconsiders and remands for a second evidentiary hearing | ECF No. 1-2 at 7–9 |
| May 20, 2021 | Wisconsin Court of Appeals concludes Petitioner's claim is barred by laches | ECF No. 1-2 at 23 |
| December 8, 2022 | Circuit court denies Petitioner's § 974.06 motion without a hearing | ECF No. 1-2 at 28–29 |
| October 22, 2024 | Wisconsin Court of Appeals affirms the denial of Petitioner's § 974.06 motion without a hearing | ECF No. 9-1 |
| August 11, 2025 | Petitioner files petition for a writ of habeas corpus in federal court | ECF No. 1 |

3. ANALYSIS

Petitioner seeks habeas relief on the following grounds: (1) ineffective assistance of trial counsel for condoning ex parte communications to discuss the plea agreement; (2) ineffective assistance of trial counsel for failing to pursue a dismissal motion; (3) ineffective assistance of postconviction/appellate counsel for abandoning Petitioner

one day after sentencing with no notice; (4) ineffective assistance of postconviction/appellate counsel for failing to file a notice of intent to pursue postconviction relief; (5) the trial judge's involvement in the plea agreement made it an unconstitutional and involuntary plea; and (6) the plea was unconstitutional because there was no plea colloquy. ECF No. 5 at 3–4 (citing ECF No. 1 at 15–17). Respondent moves to dismiss the Petition, arguing that each ground is untimely, procedurally defaulted, or both. ECF No. 9 at 1.

Petitioner "acknowledge[s] that on the surface [his] petition appears utterly untimely based on an original conviction date of (2005)" but Petitioner argues he qualifies for equitable tolling. ECF No. 1-1 at 1.

**3.1 Petitioner's Claims Are Untimely**

As explained in the Court's screening order, state prisoners seeking federal habeas review have one year to file a petition for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). Relevant here, the one-year clock begins running when a judgment becomes final, or when the factual predicate of a claim could have been discovered with due diligence. *Id.* § 2244(d)(1)(A) & (D). A judgment is "final" under this rule at "the conclusion of direct review [in the state appellate courts] or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A); *Ray v. Clements*, 700 F.3d 993, 1003 (7th Cir. 2012). The Court considers the timeliness of each claim independently. *Davis v. United States*, 817 F.3d 319, 328 (7th Cir. 2016) (collecting cases).

For habeas limitations period purposes, the date is April 24, 2006, the day of Petitioner's original judgment of conviction. ECF Nos. 9-6 and 9-7; *Staffa v. McCaughtry*, No. 03-C-701-C, 2003 WL 23170808, at *3 (W.D. Wis. Dec. 30, 2003) ("Although the court modified petitioner's judgment when it resentenced him after probation revocation, the resentencing did not open up his original judgment of conviction to a second round of direct review."

(citing *State v. Drake*, 515 N.W.2d 923, 924 (Wis. Ct. App. 1994))). "When a sentence is withheld and the defendant is placed on probation, he must raise any challenges relating to that conviction, including to the plea, at that time." *Sanders v. Paquin*, No. 09-CV-472-BBC, 2009 WL 2450362, at *2 (W.D. Wis. Aug. 7, 2009) (citing *State v. Tobey*, 584 N.W.2d 95, 96 (Wis. Ct. App. 1996) and *Drake*, 515 N.W.2d at 924).

Petitioner's grounds one, two, five, and six challenge the constitutionality of events and circumstances related to the April 2006 judgment of conviction. Petitioner knew the factual circumstances underlying these grounds when they occurred in April 2006. In Wisconsin, a conviction becomes final twenty days after the "date of sentencing or final adjudication" if the defendant does not seek direct review. Wis. Stat. § 809.30(b)(2). Accordingly, Petitioner's conviction became final twenty days after the sentencing hearing: May 11, 2006. The next day began the one-year window for Petitioner to file a habeas petition on grounds one, two, five, and six. That window has been long shut.

Petitioner's one-year statute of limitations on grounds three and four began to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1). Respondent concedes that the factual predicate for grounds three and four—ineffective assistance of post-conviction/appellate counsel—could not have been discovered until after Blank failed to file Petitioner's notice of intent to pursue postconviction relief within the twenty-day window. ECF No. 9 at 11. Respondent asserts that, at the latest, "there can be no reasonable dispute that [Petitioner] would have recognized Attorney Blank's errors by the time his probation was revoked and a new attorney was assigned to represent him nearly three years later" at the revocation proceedings. ECF No. 9 at 11. The Wisconsin

Court of Appeals similarly concluded in its May 2021 review of Petitioner's ineffective assistance of postconviction/appellate counsel claims that "at a minimum, [Petitioner] was aware of his appellate rights by 2009," when he was resentenced following revocation. ECF No. 1-2 at 23.

The Court agrees that, at the latest, Petitioner could have discovered the factual predicate for grounds three and four through the exercise of due diligence when he was resentenced on December 11, 2009. Direct review of Petitioner's resentencing following revocation did not restart or toll the habeas limitations period for grounds related to Petitioner's original judgment of conviction. 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review *with respect to the pertinent judgment or claim* is pending shall not be counted toward any period of limitation under this subsection." (emphasis added)); *Staffa*, 2003 WL 23170808, at *3; *Sanders*, 2009 WL 2450362, at *2. Indeed, the court of appeals explained this in its no-merits review of Petitioner's sentence following revocation: "An appeal from sentencing after revocation of probation does not bring before us the original judgment of conviction unless the appellant shows good cause to extend the time to appeal from that judgment under Wis. Stat. Rule 809.82(2)." ECF No. 9-12 at 2; ECF No. 1-1 at 2 (Petitioner acknowledges that "no review of [his] 'original' conviction is allowed during this 'appeal of sentencing after revocation'").

Accordingly, the factual predicate underlying grounds three and four—Blank's failure to counsel Petitioner postconviction and failing to file a notice of intent to pursue postconviction relief—could have been discovered with the exercise of due diligence by December 11, 2009. *See Davis*, 817 F.3d at 327 ("[A] defendant bears a duty of diligence in monitoring the status of his appeal. . . . under no circumstance can we

imagine that, in the exercise of due diligence, it could have taken Davis more than three years to discover that fact." (citing *Ryan v. United States*, 657 F.3d 604, 607–08 (7th Cir. 2011) and *Montenegro v. United States*, 248 F.3d 585, 592–93 (7th Cir. 2001), *overruled in part on other grounds by Ashley v. United States*, 266 F.3d 671, 674–75 (7th Cir. 2001))). The habeas limitations window on grounds three and four ran for one year starting the day after December 11, 2009 at the latest. That window has also been long shut.

#### 3.1.1 Equitable Tolling

Equitable tolling can excuse an untimely petition if the petitioner establishes "(1) that he has been pursuing his rights diligently, *and* (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Socha v. Boughton*, 763 F.3d 674, 683 (7th Cir. 2014) (emphasis added) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). This is "a highly fact-dependent area in which courts are expected to employ flexible standards on a case-by-case basis." *Id.* at 684 (quotations omitted). "[T]he threshold necessary to trigger equitable tolling is very high," *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000), and it is "an extraordinary remedy [which] is rarely granted," *Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir. 2013) (citations omitted). Even where it applies, equitable tolling can only offer a "brief extension of time during which a late filing will be accepted." *Gray v. Zatecky*, 865 F.3d 909, 912 (7th Cir. 2017) (citing *Holland*, 560 U.S. 631). The Seventh Circuit has held that a petition which was just two months late could not be saved by equitable tolling. *Gladney v. Pollard*, 799 F.3d 889, 894–95 (7th Cir. 2015).

Petitioner argues that he satisfies the criteria for equitable tolling because he has pursued his rights diligently and extraordinary circumstances stood in his way to prevent timely filing. ECF No. 1-1 at 1; ECF No. 2. In support of diligence, Petitioner details "persistent and endless

activity beginning with [his] 'sentencing' after revocation[] of probation in (12-11-09)," including: receiving his case file and transcripts, ECF No. 2 at ¶ 52; fervently seeking "206pg-disc" discovery, *id.* ¶¶ 54, 58, 72, 96, 115, studying legal procedure, *id.* ¶ 59; working with a law school's Legal Assistance to Incarcerated People program, *id.* ¶¶ 67, 82, 85, 87, 89; and filing briefs in state court, *id.* ¶¶ 112, 114, 131. As Petitioner puts it, "[Petitioner's] level of diligence must be given credit." *Id.* ¶ 126.

A petitioner must demonstrate reasonable diligence during the statute of limitations period until the petition is filed. *Kyles v. Warden*, No. 3:20-CV-959-JD-MGG, 2020 WL 8513018 (N.D. Ind. Dec. 4, 2020) ("For diligence, federal habeas petitioners must show reasonable diligence in pursuing their rights throughout the federal limitations period and until the date the habeas petition is filed." (citing *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016)); *Mayberry v. Dittmann*, 904 F.3d 525, 531 (7th Cir. 2018) (noting "reasonable effort throughout the limitations period is required" (citing *Carpenter*, 840 F.3d at 870)).

The Court finds that Petitioner's long delay, by itself, almost completely closes the door on his request for equitable tolling. Any sliver of viability is destroyed by Petitioner's lack of diligence specifically during the limitations periods, from May 2006 to May 2007 for grounds one, two, five, and six, and from December 2009 to December 2010 for grounds three and four. Petitioner's activities began *after* the appeal concluded for his resentencing following revocation. At that point, the habeas limitations period had run many times over for grounds one, two, five, and six. Although Petitioner has documented diligent efforts from 2011 to the filing of this Petition in 2025, equitable tolling contemplates only a *brief* extension of time during which a late filing will be accepted. Assuming Petitioner could have discovered the factual predicate supporting grounds three and

four on December 11, 2009, equitable tolling cannot save a limitations period that has been closed for over a decade. Petitioner cannot satisfy the criteria for equitable tolling because he did not pursue his rights diligently during the limitations periods; accordingly, the Court will not consider whether extraordinary circumstances stood in Petitioner's way to prevent the timely filing of his petition.

#### 3.1.2 Petitioner's Arguments Do Not Entitle Him to Equitable Tolling

Petitioner first argues that "[b]eing a party to an '[e]vent' or identifying its predicate potential for constitutional violation(s), is and are two (2) completely different things." ECF No. 14 at 24. In other words, Petitioner asserts that, without counsel, Petitioner could not have known the legal significance of these events. *See id.* at 24. Under AEDPA, however, "the trigger in § 2244(d)(1)(D) is (actual or imputed) discovery of the claim's 'factual predicate', not recognition of the facts' legal significance." *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)). "Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." *Id.*

Second, Petitioner argues that the second evidentiary hearing revealed previously unknown and theretofore unknowable facts; that it took Petitioner two evidentiary hearings to document Blank's "abandonment" and "breach of a duty" shows that Petitioner could not have discovered these facts earlier through due diligence. *See* ECF No. 14 at 12–13; ECF No. 1-1 at 3 ("The two (2) needed [e]vid○entiary hearings are tantamount in understanding and describing the immense level of diligence needed to produce these facts only now of record." (emphasis omitted)). Petitioner's point here misses the legally relevant factual predicate for grounds three and four. The factual predicate for grounds three and four

was Blank's failure to counsel Petitioner on postconviction relief, and failure to file Petitioner's notice of intent to pursue postconviction relief. Blank's withdrawing representation so soon after the sentencing hearing strengthens Petitioner's ineffective assistance of postconviction/appellate counsel claim, but the factual predicate is ultimately Blank's failure to counsel Petitioner and failure to file Petitioner's notice of intent to pursue postconviction relief. The key date, for habeas purposes, is not the evidentiary hearing when Blank's early withdrawal was recorded, but rather when Petitioner *could have discovered* Blank's postconviction failures. Petitioner could have discovered these failures, at the latest, when he was sentenced following revocation.

Third, relatedly, Plaintiff labels the evidence gleaned at the second evidentiary hearing "newly recorded evidence," or "newly discovered evidence." ECF No. 1-1 at 4–6; ECF No. 14 at 8–9, 12–14, 18. New evidence supporting a habeas petitioner's actual innocence can excuse an untimely or procedurally defaulted petition. *Schlup v. Delo*, 513 U.S. 298, 329 (1995) ("Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."). "[A]ctual innocence may be used as a 'gateway' to excuse procedural defaults that would otherwise bar a federal court from reaching the merits of the underlying claims." *Gladney v. Pollard,* 799 F.3d 889, 896 (7th Cir. 2015) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 391 (2013)). Here, Petitioner does not argue for the actual innocence exception. The "new evidence" Petitioner puts forward supports the merits of his ineffective assistance of postconviction/appellate counsel claim but does not demonstrate his actual innocence.

### 3.2 Whether Petitioner's Grounds One Through Five Are Procedurally Barred

Separately, Respondent asserts that grounds one, two, three, four, and five are procedurally barred because the state court of appeals addressed those claims on adequate and independent state law grounds. ECF No. 9 at 15–20. Petitioner counters that the procedural bar the court of appeals applied to grounds two and five is not consistently applied, ECF No. 14 at 21–22; the court of appeals considered the doctrine of laches although the state had not argued it, *id.* at 27; and the "newly recorded findings of fact" constituted a sufficient reason for Petitioner's failure to bring new claims in earlier motions, *id.* at 18–19.

"[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Whyte v. Winkleski*, 34 F.4th 617, 623 (7th Cir. 2022) (quoting *Davila v. Davis*, 582 U.S. 521, 527 (2017)). A state-law procedural ground "is adequate if it is 'firmly established and regularly followed as of the time when the procedural default occurred.'" *Triplett v. McDermott*, 996 F.3d 825, 829 (7th Cir. 2021) (quoting *Richardson v. Lemke*, 745 F.3d 258, 271 (7th Cir. 2014)). A state-law procedural ground "is independent of federal law if it does not depend on the merits of the petitioner's claim." *Id.* (citing *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (per curiam)).

Because the Court finds all of Petitioner's grounds for relief untimely, the Court will not analyze whether grounds one, two, three, four, and five are separately procedurally barred by the Wisconsin Court of Appeals' decisions on adequate and independent state law grounds.

## 4. CONCLUSION

In sum, Petitioner's petition is untimely and he has not carried his burden on equitable relief. His petition must, therefore, be denied. Under Rule 11(a) of the Rules Governing Section 2255 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Petitioner must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). Further, when the Court has denied relief on procedural grounds, the petitioner must show that jurists of reason would find it debatable both that the "petition states a valid claim of the denial of a constitutional right" and that "the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As the Court discussed above, reasonable jurists would not debate whether the petition should have been resolved in a different manner. As a consequence, the Court is further compelled to deny a certificate of appealability as to Petitioner's petition.

Accordingly,

**IT IS ORDERED** that Respondent Daisy Chase's motion to dismiss Petitioner Kevin S. Maas's petition for writ of habeas corpus, ECF No. 8, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Petitioner Kevin S. Maas's petition for writ of habeas corpus, ECF No. 1, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 16th day of September, 2026.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.